UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SIT N' STAY PET SERVICES, INC.,

        Plaintiff,

    v.

CARRIE HOFFMAN D/B/A KELSEY'S SIT AND STAY D/B/A KELSEY'S SIT, PLAY, & STAY,

        Defendant.

17-CV-116
DECISION AND ORDER

---

       The plaintiff, Sit N' Stay Pet Services, Inc. ("Sit N' Stay"), has sued Carrie Hoffman doing business as Kelsey's Sit and Stay and Kelsey's Sit, Play, & Stay. Based on the similarity of the three business names, Sit N' Stay has alleged that Kelsey's Sit and Stay and Kelsey's Sit, Play, & Stay engaged in unfair competition and false designation of origin in violation of the Lanham Act (the "Act"), 15 U.S.C. Section 1125(a); trademark infringement and unfair competition in violation of New York common law; and deceptive trade practices in violation of New York General Business Law Section 349. Before this Court is Magistrate Judge Jeremiah J. McCarthy's Report and Recommendation on the defendant's motion to dismiss for lack of subject-matter jurisdiction and the plaintiff's request for Rule 11 sanctions. For the following reasons, this Court adopts Judge McCarthy's recommendation and denies both the motion to dismiss and the request for Rule 11 sanctions.

## BACKGROUND[1]

Kim Sauer, the owner and operator of Sit N' Stay, has sold pet-sitting and dog-training services since at least June 4, 2002, under the name "Sit N' Stay Pet Services." Docket Item 1 ¶¶ 12, 28. Sauer has maintained a website advertising her services since at least May 30, 2003, at the domain name www.sitnstaypetservices.com, with other domain names directed to this website. *Id.* ¶ 34, 34.1-.4. She incorporated Sit N' Stay Pet Services, Inc., on July 3, 2008. *Id.* ¶¶ 11, 28, 39.

According to the complaint, defendant Hoffman has been advertising and selling pet-sitting services under the name "Kelsey's Sit and Stay" since January 1, 2015. *Id.* ¶ 52. In December 2016, Hoffman began doing business also as "Kelsey's Sit, Play, & Stay," and at the time the complaint was filed she did business under both names. *Id.* ¶ 55. She has advertised and sold services at the domain name www.facebook.com/KelseysSitandStay since April 17, 2015; at www.KelseysSitandStay.com since January 1, 2016; and at www.facebook.com/KelseysSitPlayandStay since sometime after December 5, 2016. *Id.* ¶ 53-55.

## PROCEDURAL HISTORY

In lieu of answering the complaint, Hoffman moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Docket Item 6. The case was referred to Judge McCarthy on March 1, 2017. Docket Item 7. The plaintiff

---

[1] The facts are taken from the complaint as they must be on this motion to dismiss. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

then filed a memorandum opposing the motion to dismiss, which included a request for sanctions under Federal Rule of Civil Procedure 11. Docket Item 9. On April 17, 2017, Judge McCarthy issued his Report and Recommendation, in which he recommended that both the defendant's motion to dismiss and the plaintiff's request for Rule 11 sanctions should be denied. Docket Item 12. The defendant objected, and, after the objection was fully briefed, this Court heard oral argument on June 16, 2017. Docket Items 13, 15-17.

## DISCUSSION

### I. REVIEW OF REPORT AND RECOMMENDATION

This Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); see 28 U.S.C. § 636(b)(1).

### II. PROCEDURAL PRINCIPLES FOR FEDERAL-QUESTION JURISDICTION

Hoffman has moved to dismiss the complaint for lack of federal-question jurisdiction. She argues that Sit N' Stay has not met its burden of establishing jurisdiction because it has failed to plead claims that arise out of federal law or raise a substantial federal question. Docket Item 6-1 at 12.

District courts have jurisdiction to hear all cases "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. A suit arises under the federal law that creates the cause of action only if the complaint, on its face, pleads such a cause of action. *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *American Well Works Co. v. Layne Bowler Co.*, 241 U.S. 257, 260 (1916). Therefore,

"[a] plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Federal Constitution or laws." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 501 (2006) (citation omitted).

A party may bring a motion challenging the federal court's subject-matter jurisdiction at any time. Fed. R. Civ. P. 12(h)(3). Following such a motion, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).

"The party asserting federal jurisdiction bears the burden of proving that the case is properly in federal court." *Gilman v. BHS Sec., Inc.*, 104 F.3d 1418, 1421 (2d Cir. 1997) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Once a plaintiff asserts a federal question, however, the plaintiff need only show that she has alleged a non-frivolous claim under federal law to establish subject-matter jurisdiction. *Shapiro v. McManus*, __ U.S. __, 136 S. Ct. 450, 455 (2015) (citing *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). "Absent such frivolity, 'the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.'" *Id.* at 456 (quoting *Bell*, 327 U.S. at 682).[2] Thus, there is a "very low

---

[2] As highlighted by the Supreme Court in *Arbaugh*, courts should be cautious not to obscure this distinction:

> Judicial opinions . . ."often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim."

546 U.S. at 511 (quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000). The Supreme Court describes such decisions as "'drive-by jurisdictional rulings' that should be accorded 'no precedential effect' on the question whether the federal

threshold required to support federal-question jurisdiction." *Gallego v. Northland Group Inc.*, 814 F.3d 123, 128 (2d Cir. 2016).

"When the Rule 12(b)(1) motion is facial, *i.e.,* based solely on the allegations of the complaint . . . the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). Under those circumstances, a court draws all facts from the complaint, "which [it] assume[s] to be true unless contradicted by more specific allegations or documentary evidence." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). A defendant is permitted, however, "to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Carter*, 822 F.3d at 57.

## III. FEDERAL-QUESTION JURISDICTION UNDER THE LANHAM ACT

First, this Court finds that, on its face, the complaint states a claim for relief under federal law and that Sit N' Stay's claim therefore "arises under" federal law.

In the complaint, Sit N' Stay alleges that Hoffman engaged in unfair competition and false designations of origins—violations of the Lanham Act—that entitle the plaintiff to relief. Docket Item 1 ¶ 61-120. Thus, the complaint includes a statement for relief arising from the federal law that creates the cause of action. *See Mottley*, 211 U.S. at 152; *American Well Works Co.*, 241 U.S. at 260.

Sit N' Stay argues that these allegations give this Court subject-matter jurisdiction under three provisions: (1) 15 U.S.C. Section 1121 (granting district courts original jurisdiction over Lanham Act claims); (2) 28 U.S.C. Section 1331 (granting

---

court had authority to adjudicate the claim." *Id.* (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 91 (1998)).

5

district courts original jurisdiction over federal questions); and 28 U.S.C. Section 1338 (granting district courts original jurisdiction over any civil action asserting a claim of unfair competition when accompanying a substantial and related claim under trademark laws). Docket Item 1 ¶5.

But Hoffman says that Sit N' Stay is missing an element necessary for subject-matter jurisdiction. Specifically, she argues that Sit N' Stay has failed to allege that she had "substantial effects on interstate commerce" and therefore failed to satisfy the "in commerce" element of the Lanham Act.[3] Docket Item 6-1 at 6-9. Hoffman also argues that because Sit N' Stay's website advertises that it serves "most of Erie County, and some of Niagara County," it cannot also claim to be "in commerce."[4] Docket Item 10 at 2.

In response, Sit N' Stay argues that it is not required to establish any activity "in commerce" for the sake of establishing jurisdiction because "in commerce" is an element of the cause of action under 15 U.S.C. Section 1125(a), not a jurisdictional requirement under 15 U.S.C. Section 1121(a). Docket Item 9 at 10-11. Sit N' Stay also argues that even if "in commerce" were a jurisdictional requirement, it has asserted both its own activity in interstate and international commerce and the defendant's

---

[3] "In commerce" refers to interstate and foreign commerce. *See N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 31, 57 S. Ct. 615, 621 (1937) (finding that the phrase "affecting commerce," defined by Congress as "in commerce," unquestionably refers to interstate and foreign commerce.)

[4] The defendant's argument that a company serving "most of Erie County, and some of Niagara County" necessarily cannot be in interstate or international commerce is a non sequitur based on a logical fallacy. The fact that a company serves Erie and Niagara Counties does not mean it does not also serve customers from outside those locales, as might have been the case if the plaintiff advertised that it served "*only* Erie and Niagara Counties."

6

interference with that activity, as well as the defendant's own activity in interstate and international commerce. *Id.* at 5; *see* Docket Item 1 ¶¶ 3, 53-57.

This Court agrees that "in commerce" is not a jurisdictional element of the Lanham Act. Sit N' Stay, therefore, has no burden to allege that it or Hoffman are "in commerce" to establish subject-matter jurisdiction.

### A. "In Commerce" Is Not a Jurisdictional Element of the Lanham Act.

When deciding federal-question jurisdiction, courts should distinguish facts—or, in this instance, allegations—that determine subject-matter jurisdiction from those that are elements of a claim for relief. *Arbaugh*, 546 U.S. at 503. Relevant to this Court's analysis are two provisions of the Lanham Act: 15 U.S.C. Section 1121(a),[5] which grants jurisdiction to federal district courts; and 15 U.S.C. Section 1125(a),[6] which outlines the elements needed to state a claim under the Act. Recent case law suggests that "in commerce" is an element of the cause of action under 15 U.S.C. Section 1125(a), not an element required to establish federal subject-matter jurisdiction under Section 1121(a).

In *Arbaugh v. Y & H Corp.*, the Supreme Court distinguished between jurisdictional elements and cause-of-action elements. *Arbaugh* concerned a Title VII

---

[5] 15 U.S.C. Section 1121 in relevant part provides:
> The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity . . . .

[6] 15. U.S.C. Section 1125 provides:
> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, [or] name, . . . which is likely to cause confusion . . . or to deceive as to the affiliation . . . of such person with another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

7

claim that was dismissed for lack of federal-question jurisdiction. 546 U.S. at 515-16. The district court had dismissed the claim because the defendant employer had fewer than 15 employees—a requirement under Title VII. *Id.* at 504. *Arbaugh* therefore presented a discrete question: Is Title VII's requirement that the defendant have at least 15 employees a jurisdictional prerequisite? *Id.* at 513.

In answering this question, the Supreme Court looked to the statute's language to determine Congressional intent. *Id.* at 515. Because Title VII's 15-employee requirement appeared in a provision separate from the jurisdictional provision, and because the employee-numerosity provision did not use jurisdictional language or refer to the jurisdiction of district courts, the Court did not read the 15-employee requirement into the jurisdictional provision. *Id.* at 515. Thus, the Supreme Court established a bright line: "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516.

The Ninth Circuit recently applied this bright-line rule when it held that "in commerce" was not a jurisdictional requirement of the Lanham Act. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 872 (9th Cir. 2014). In *La Quinta*, a Mexican hotel chain challenged federal-question jurisdiction by claiming that it was not "in commerce" because it had sent only two letters of intent to open hotel branches in the United States. *Id.* But the Ninth Circuit disagreed: "[N]othing suggests that Congress intended that 'use in commerce' be interpreted as a jurisdictional requirement." *Id.* at 873 (citing *Arbaugh,* 546 U.S. at 515-16). More recently, the Ninth Circuit cited both *Arbaugh* and *La Quinta* when it held that the Lanham Act's "use in

8

commerce" requirement was an element of the cause of action, and not a jurisdictional element, in a trademark infringement action against a ukulele manufacturer. *Gibson Brands, Inc. v. Viacom Intern., Inc.*, 640 F. App'x 677, 678-79 (9th Cir. 2016).

Section 1121, the jurisdictional section of the Lanham Act, does not include the "in commerce" language. *See* 15 U.S.C. § 1121. Rather, "in commerce" is found only in Section 1125, which provides the elements for a viable claim. *See* 15 U.S.C. § 1125. Therefore, the Ninth Circuit's textual analysis, as instructed by *Arbaugh*, makes resolving the issue here quite simple: Because "in commerce" is not included in the jurisdictional provision of the Lanham Act, it is an element of the cause of action, not an element required to establish jurisdiction. *See Arbaugh*, 546 U.S. at 515-16.

Therefore Hoffman's allegations that neither Sit N' Stay nor her own business are "in commerce" do not impact subject-matter jurisdiction.[7]

---

[7] But even if Sit N' Stay were required to allege that both it and Hoffman are "in commerce" to establish federal-question jurisdiction, it has made these allegations.

First, Sit N' Stay has alleged specific facts supporting its own participation in interstate and foreign commerce. For example, people travel across state lines to buy and receive its services, Docket Item 1 ¶ 3; people can purchase, and have purchased, gift cards for Sit N' Stay's services on the internet, *id.*; Sit N' Stay employees travel in interstate commerce to provide services, *id.* ¶ 63; people purchase Sit N' Stay's instructional courses in states and nations different from where the course is taught, *id.* ¶ 65; and Sit N' Stay advertises its services in interstate commerce, *id.* ¶ 66.

With respect to the defendant's participation "in commerce," Sit N' Stay alleges that Hoffman maintains a website and a Facebook page with the words "sit" and "stay." *Id.* ¶¶ 53-54. In response, Hoffman argues that "[m]ere use of a particular world or term on an internet site is not 'use in commerce' for purposes of the Lanham Act." Docket Item 10 at 3. But case law instructs that internet activity can place an individual "in commerce." And that is especially so when the internet activity is alleged to interfere with the interstate and foreign commerce of another entity.

In fact, the case law suggests that maintaining a website, without more, can suffice to establish a defendant's activity "in commerce." *See, e.g.*, *United States v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007). And one district court has noted that

9

### B. Sit N' Stay's Allegations That Establish Subject-Matter Jurisdiction Are Not Frivolous.

Because Sit N' Stay's allegations raise a federal question, those allegations must simply not be frivolous to survive a 12(b)(1) motion. *See Gallego*, 814 F.3d at 126 (quoting *Shapiro*, 136 S. Ct. at 455). And those allegations easily meet that generous standard—that is, they are not "obviously without merit," "essentially fictitious," or "wholly insubstantial." *See Shapiro*, 136 S. Ct. at 456.

Indeed, Sit N' Stay fleshes out its claim in considerable detail. It alleges that it has accumulated trademark rights to the use of "sit" and "stay" and has asserted those rights prior to this lawsuit. Docket Item 1 ¶¶ 48-49; *see generally id.* ¶¶ 27-51. It alleges that two pet-service companies' using "sit" and "stay" in their names is likely to cause customer confusion. *Id.* ¶¶ 116, 116.1-.4. It alleges that its business involves interstate commerce and that the defendant has interfered with that business by advertising and selling pet services under the names "Kelsey's Sit and Stay" and

---

"[b]ecause the internet is an 'instrumentality of interstate commerce,' courts have repeatedly held that the unauthorized use of a trademark on the internet satisfies the 'in commerce' requirement [of the Lanham Act]." *AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 512 (W.D. Va. 2013) (citing *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research,* 527 F.3d 1045, 1054 (10th Cir.2008)).

Likewise, the effect of the defendant's websites on Sit N' Stay's interstate and international commerce activities also places Hoffman "in commerce." The Supreme Court has made clear that the Lanham Act "confers broad jurisdictional powers upon the courts of the United States." *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952). In that vein, a judge in the Southern District of New York has held that if a defendant's activities have an effect on the plaintiff's interstate commerce activities, that is enough to place the defendant within reach of the Lanham Act. *Planned Parenthood Fed'n of America v. Bucci*, No. 97 CIV. 0629 (KMW), 1997 WL 133313 at *3 (S.D.N.Y., Mar. 24, 1997), *aff'd* 152 F.3d 920 (2d Cir. 1998), *cert. denied*, 525 U.S. 834 (1998). Because Sit N' Stay has alleged that Hoffman's presence on the internet has adversely affected its activities "in commerce," Sit N' Stay has successfully alleged that Hoffman is also "in commerce."

"Kelsey's Sit, Play, & Stay" and using website domains that include such names. *Id.* ¶ 52-55. In other words, Sit N' Stay has detailed how the defendant advertised and used the internet in ways that allegedly interfered with Sit N' Stay's interstate and international business.

On their face, these allegations state a non-frivolous claim for relief. *See Amidax Trading Grp.* 671 F.3d at 145-46. In her 12(b)(1) motion, Hoffman had the opportunity to demonstrate that the plaintiff's claims are "'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' [or] 'obviously without merit.'" *See Shapiro*, 136 S. Ct. at 456. But Hoffman has not offered documentary evidence or other proof to show that Sit N' Stay's allegations are "essentially fictitious" or "wholly insubstantial." [8] *See Amidax Trading Grp.* 671 F.3d at 145; *Carter*, 822 F.3d at 56. And for that reason, this Court has subject-matter jurisdiction.

In his Report and Recommendation, Judge McCarthy stated that he would allow Hoffman to convert her 12(b)(1) motion into a 12(b)(6) motion but would first allow Sit N' Stay to amend its complaint. Docket Item 12 at 3. This Court agrees with that plan.

---

[8] Hoffman argues in her objections to the Report and Recommendation that Judge McCarthy "improperly placed the burden on Defendant to show the lack of subject matter jurisdiction." Docket Item 13 at 7. Hoffman has confused Sit N' Stay's burden of pleading with her opportunity to contradict or undermine Sit N' Stay's allegations establishing subject-matter jurisdiction. Sit N' Stay had the burden of establishing jurisdiction, which it did by alleging on the face of the complaint a claim for relief based on federal law. Hoffman then had the opportunity to show that the claim for relief was "wholly insubstantial and frivolous" and assert lack of subject-matter jurisdiction on the face of the complaint. *See Shapiro*, 136 S. Ct. at 456. So Judge McCarthy did not shift the burden when he addressed whether the defendant had shown the plaintiff's claim to be fictitious, frivolous, or meritless. *See* Docket Item 12 at 2.

## IV. RULE 11 SANCTIONS

This Court agrees with Judge McCarthy that because Sit N' Stay (1) did not make its request for sanctions "separately from any other motion," as required by Rule 11(c)(2), and (2) did not allege that it complied with the "safe harbor" requirements of Rule 11, its request for sanctions must be denied.

## **CONCLUSION**

For the reasons stated above and in the Report and Recommendation, this Court DENIES the defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) and DENIES the plaintiff's request for Rule 11 sanctions. The case is referred back to Judge McCarthy for further proceedings consistent with the referral order of March 1, 2017.

SO ORDERED.

Dated: September 5, 2017
Buffalo, New York

                                                *s/Lawrence J. Vilardo*
                                                Lawrence J. Vilardo
                                                United States District Judge