UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SIT N' STAY PET SERVICES INC.,                    **REPORT AND**
                                                   **RECOMMENDATION**

                                    Plaintiff,     17-CV-00116-LJV-JJM

v.

CARRIE HOFFMAN,

                                    Defendant.

_____

        Before the court are plaintiff's motions for an award of attorney's fees pursuant to

15 U.S.C. §1117(a) [43],[1] and for relief under Fed. R. Civ. P. ("Rule") 6(b) [45], which have

been referred to me by District Judge Lawrence J. Vilardo for initial consideration [53].

Conferences regarding the motions were held on December 19, 2018 and January 24, 2019 [46,

52]. Having reviewed the parties' submissions [43, 45, 48, 49, 51], for the following reasons I

recommend that both motions be denied.

## BACKGROUND

        Plaintiff  commenced this action on February 7, 2017, seeking relief for alleged

violations of the Lanham Act, 15 U.S.C. §1051 *et seq*., New York common law trademark

infringement and unfair competition, and violation of New York General Business Law §349.

*See* Complaint [1]; Amended Complaint [23]. On August 14, 2018 Judge Vilardo scheduled a

bench trial to commence on October 9, 2018 [36]. On the date set for trial, the parties filed a

_____

[1]     Bracketed references are to the CM/ECF docket entries.  Unless otherwise indicated, page
references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

"Stipulation To Dismiss and Order" [40] and "Settlement Agreement" [40-1], which Judge

Vilardo "So Ordered" [42].

The Stipulation provided that "[t]his action is hereby dismissed with prejudice

subject to the terms of the Stipulation and Settlement Agreement" ([40], p. 4 of 12), and that the

court retains jurisdiction to "hear and decide post-settlement motions, such as . . . for an award of

attorney's fees [and to] enforce the terms of this Stipulation". Id., §§7.1, 7.2. One of those terms

was that "[p]laintiff's motion for attorney's fees and costs shall be due sixty (60) days after entry

of this Order" (id., §3), namely "on or before Monday, December 10, 2018". Fox Declaration

[43-9], ¶5. However, the motion [43] was not served or filed until December 12, 2018.

Plaintiff's attorney, Steven Fox, states that he attempted to electronically file the

motion for attorney's fees shortly before 10:00 p.m. on December 10, 2018 but was unable to do

so, and that that the clerk's office was unavailable to assist him at that late hour. Fox Declaration

[45-1], ¶¶5, 6, 10. He then e-mailed to Judge Vilardo's chambers and defense counsel a

hyperlink for accessing the motion papers e court and defense counsel (id., ¶¶11-14) and, with

the assistance of the clerk's office, was able to docket the motion on December 12, 2018. Id.,

¶17. Therefore, plaintiff now moves "for an Order pursuant to Rule 6(b)(1)(B) granting . . . *Nunc

Pro Tunc* Filing of Plaintiffs Motion for Attorneys' Fees, or in the alternative extending the time

to file said motion from December 10, 2018 until December 12, 2018". [45].


**DISCUSSION**

**A.    The Fee Motion Cannot Retroactively Be Deemed Timely.**

"[T]he service and filing of papers supporting and responding to a motion cannot

be left to the volition of the individual litigant. Instead, such actions must be controlled by

clearly defined rules designed to optimize fairness and efficiency." United States v. International Business Machines Corp., 68 F.R.D. 613, 615 (S.D.N.Y. 1975). Rule 5 requires that a motion be both served on opposing counsel and filed with the court, and clearly defines how that is to occur.

Rule 5(b)(2)(E) allows a document to be served electronically by "filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing". Mr. Fox admits that he did not file the motion with the court's electronic filing system on the evening of December 10, 2018, because he believed that "CM/ECF would not accept any filings". Fox Declaration [45-1]. Nor does he suggest that defendant consented in writing to electronic service other than via CM/ECF; and "[a]bsent prior written consent, emailing . . . [does] not meet the requirements of Rule 5". Salsman v. Access Systems Americas, Inc., 2010 WL 3743765, *2 (N.D. Cal. 2010). *See also* Administrative Procedures Guide for Electronic Filing, §2(F)(v) ("[e]-mailing . . . a pleading or document to any party shall **not** constitute service") (emphasis in original).

Courts "have no power to rewrite the Rules". Harris v. Nelson, 394 U.S. 286, 298 (1969). Therefore, this court may not deem the motion to have been served by the December 10, 2018 deadline - and since Rule 5 requires both service *and* filing, it likewise may not grant plaintiff's request to treat the fee motion [43] as having been "filed on the date due"(plaintiff's Memorandum of Law, [45-8], p. 3).[2]

---

[2]     "A document shall not be considered filed for purposes of the Federal Rules of Civil and Criminal Procedure until the filing party receives a System generated Notice of Electronic Filing. E-mailing or faxing a document to the Clerk's Office or to the assigned judge shall not constitute 'filing' of such document. Administrative Procedures Guide for Electronic Filing, §2(A)(i).

**B.      The Agreed-Upon Deadline for the Fee Motion Should Not Be Extended.**

In the alternative, plaintiff requests "that the due date be extended, *nunc pro tunc*, to December 12, 2018". Plaintiff's Memorandum of Law, [45-8], p. 3. Plaintiff relies upon Rule 6(b)(1)(B), which provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect".

Plaintiff argues that the court should consider "the danger of prejudice . . . the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith". Id., p. 1 (*quoting* Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 395 (1993)).

**1.      The Reason for the Delay**

Plaintiff argues that "[t]he reason for the delay was an impediment F ox encountered within the CM/ECF portal. It was not law office failure through neglect, nor inadvertence, nor ignorance of the rules, nor mistakes construing the rules". Plaintiff's Memorandum of Law [45-8], p. 2. I disagree. Mr. Fox knew of the deadline since October 9, 2018, at the latest [42]. He began to research entitlement to a fee award as early as August 16, 2018 ([43-15], p. 6 of 9), and began drafting the fee motion on October 2, 2018 (id., p. 8 of 9). Yet he waited until 10 p.m. on the day it the motion was due to attempt service and filing. "When parties wait until the last minute to comply with a deadline, they are playing with fire." Spears v. City of Indianapolis, 74 F.3d 153, 157 (7th Cir. 1996).

Plaintiff argues that "[t]he delay was not within the reasonable control of the moving party". Plaintiff's Memorandum of Law [45-8], p. 2. Again, I disagree. "[R]egistered users are strongly encouraged to file all documents during normal working hours of the Clerk's Office." Administrative Procedures Guide for Electronic Filing, §2(V). Had Mr. Fox done so, he could have served and filed successfully with assistance from that office, as he did on December 12, 2018. Fox Declaration [45-1], ¶17.

In any event, Mr. Fox had other options. Even at that late hour (December 10 at 10 p.m.), he could have served the motion by mail pursuant to Rule 5(b)(2)(C). "[S]ervice under Rule 5(b) is accomplished when the envelope is deposited at a post office or in a mail box", Greene v. WCI Holdings Corp., 136 F.3d 313, 315 (2d Cir. 1998), even after "the close of business or . . . the last mail pick-up of the day". Sterling v. Interlake Industries Inc., 154 F.R.D. 579, 584 (E.D.N.Y. 1994). He could then have filed the motion within "a reasonable time after service" under Rule 5(d)(1(A). Therefore, I find no good reason for plaintiff's delay in moving for attorney's fees.

### 2.    The Absence of Prejudice

"Plaintiff asserts that there is no danger of prejudice to the nonmoving party." Plaintiff's Memorandum of Law [45-8], p. 1. However, prejudice (or lack thereof) is irrelevant to the applicability of  a statute of limitations. *See* Mitchell v. Goord, 2011 WL 4747878, *4 (W.D.N.Y.), adopted, 2011 WL 4753456 (W.D.N.Y. 2011) ("[e]ven if Mitchell could demonstrate good cause and an absence of prejudice, Mitchell's claims are nonetheless time-barred under the applicable statute of limitations"); In re Eastman Kodak Co., 479 B.R. 280, 306, n. 14 (Bk. S.D.N.Y. 2012) ("Kodak can prevail on the statute of limitations argument without a

showing of prejudice"). For that reason, it is well settled that Rule 6(b) "does not permit extension of a statute of limitations". Caro v. United States, 2009 WL 3273847, *3 (S.D.N.Y. Oct. 14, 2009), adopted, 2010 WL 935281 (S.D.N.Y. 2010); O'Malley v. Town of Egremont, 453 F. Supp. 2d 240, 248 (D. Mass. 2006).

       The same reasoning should apply to the 60-day contractual deadline for the fee motion. "The parties may cut back on [a] Statute of Limitations by agreeing that any suit must be commenced within a shorter period than is prescribed by law. Such an agreement does not conflict with public policy but, in fact, more effectively secures the end sought to be attained by the statute of limitations." John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544, 550-51 (1979).[3] Thus, in Maving v. Maving, 125 A.D.3d 1290 (4th Dept. 2015), the court dismissed as time barred a motion for attorney's fees brought beyond the deadline to which the parties had agreed. "The parties' stipulation of settlement, which was incorporated but not merged into the judgment of divorce, provided that defendant could make an application for attorneys' fees within 15 days of the date of the stipulation. Defendant's attorney, however, did not file the application until almost six months after the date of the stipulation . . . . [T]he unilateral mistake of defendant's attorney does not excuse defendant's failure to comply with the terms of a stipulation where, as here, the language in the stipulation is clear, unequivocal, and unambiguous." Id. at 1290-91.

---

[3]    *See* Sullivan v. Allstate Insurance Co., 964 F. Supp. 1407, 1414 (C.D. Cal. 1997) ("nothing more than the mere passage of time is required to bar an action based on the [contractual] limitations provision regardless of hardship or the underlying merits of the claim"); Lumpkins v. Grange Mutual Companies, 553 N.E.2d 871, 874 (Ind. Ct. App. 1990) ("the purpose of a limiting provision is that supporting all limitations periods: to promote certainty and hasten the resolution of claims. There is nothing in these purposes that is negated by a lack of prejudice").

Plaintiff argues that "the settlement agreement in the case at bar lost its identity as a private contract. The agreement merged with the order, was subsumed by the order and is therefore governed by rules concerning orders." Plaintiff's Supplemental Memorandum of Law [48], p. 3. However, plaintiff "obtained a settlement agreement which is enforced through a consent decree" (plaintiff's Memorandum of Law [43-19], p. 3), and "a consent decree or order is to be construed for enforcement purposes basically as a contract". United States v. ITT Continental Baking Co., 420 U.S. 223, 238 (1975). "[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it . . . . The court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree . . . and the explicit language of the decree is given great weight." Berger v. Heckler, 771 F.2d 1556, 1567–68 (2d Cir. 1985). Therefore, a party "who has obtained the benefits of a consent decree . . . cannot then be permitted to ignore such affirmative obligations as were imposed by the decree". Id. at 1568 (2d Cir. 1985).

Plaintiff suggests that "[t]he standard for excusable-neglect determinations is an equitable decision". Plaintiff's Memorandum of Law, [45-8], p. 1.  True, but equity entails "fundamental fairness to both sides, which involves determining the extent to which one side or the other should bear the consequences of whatever violations occurred".  Frommert v. Becker, 153 F.Supp.3d 599, 612 (W.D.N.Y. 2016), aff'd, 913 F.3d 101 (2d Cir. 2019). Thus, in In re ML-Lee Acquisition Fund II, 1999 WL 184135 (D. Del. 1999), the court refused to equitably extend a filing deadline which the parties had negotiated and agreed upon:

> "The application of equitable principles requires the Court to
> balance the interests of the parties. In this case, the parties engaged
> in grueling and hard fought settlement negotiations, culminating in
> the very detailed and very specific Settlement Agreement . . . .
> While the Lee Defendants agreed to Plaintiffs' request to establish
> a cure period after the Liquidity Option closed, the parties agreed

that the cure period would not extend beyond ten business days
following the expiration of the Liquidity Option . . . . While the
Court acknowledges that it has the equitable powers to make
incidental modifications to a Settlement Agreement, the Court does
not find Plaintiffs request to be a mere incidental modification. In
this case, to allow Plaintiffs' request . . . would, in essence, be to
rewrite the Settlement Agreement." Id., *2.

For these reasons, I conclude that this court neither can nor should extend the

December 10, 2018 deadline for moving for attorney's fees.


**C.    Even If the Fee Motion Had Been Timely, It Should Be Denied.**

The Lanham Act, 15 U.S.C. §1117(a), provides that "[t]he court in exceptional

cases may award reasonable attorney fees to the prevailing party". "Whether to award attorney

fees, and the amount of any award, are matters that fall within the discretion of the district

court." Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc., 962 F.2d 268, 272 (2d Cir.

1992). Therefore, even in an exceptional case, the court has discretion to deny a fee award.

Fresh Del Monte Produce Inc. v. Del Monte Foods Co., 933 F. Supp. 2d 655, 665 (S.D.N.Y.

2013) ("[t]he award of attorneys' fees even in an exceptional case is discretionary. *See* 15 U.S.C.

§1117(a) (providing that courts 'may,' not shall, award fees in exceptional cases)"; Brown v.

Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980) ("'may' sometimes means 'won't'").

"A request for attorney's fees is required to be in good faith and . . . not an

opening gambit in negotiations to reach an ultimate result." Lewis v. Kendrick, 944 F.2d 949,

958 (1st Cir. 1991). Therefore, "[c]ounsel for the prevailing party should make a good faith

effort to exclude from a fee request hours that are excessive, redundant, or otherwise

unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from

his fee submission. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). "The lawyer must not

abandon self-restraint or careful billing judgment because of the expectation that the obligation

to pay the fee will be statutorily shifted to the losing party." Hall v. Borough of Roselle, 747 F.2d

838, 841 (3d Cir. 1984).[4]

       Plaintiff's motion demonstrates neither self- restraint nor billing judgment.

The motion itself "an award of $125,202 including legal fees of $124,452 and costs of $750"

(plaintiff's Memorandum of Law [43-19], p. 24), basing the fee request on time records

through December 10, 2018 totaling 311.13 hours [43-15] - all of which, according to Mr. Fox,

were  "reasonably and necessarily expended". Fox Declaration [43-9], ¶23. Plaintiff then

supplements the motion by seeking recovery for an additional 41.94 hours of attorney time from

December 12, 2018 - January 16, 2019. [51-3], pp. 7-8 (CM/ECF pagination).

       Although plaintiff's retainer agreement with Mr. Fox called for payment "at the

hourly rate of $250: the same rate [it has] always paid since 2007 for hourly work", it also

provided that "[i]n the event a court awards a larger statutory fee award, that shall be [the] fee".

[51-1], p. 1. Mr. Fox argues that "an hourly rate of $400 is, in my opinion, reasonable and

consistent with trademark and litigation attorneys in this District who have over thirty years of

experience and international credentials". Fox Declaration [43-9], ¶29.

       According to Mr. Fox, "after Plaintiff's president reviewed and approved the

Motion's constituent documents, she stated that she was not surprised to learn what the market

rate is for lawyers of my skill and experience. She said that given the prevailing rate, the value

she places on my work, and knowing the amount of work I performed, she expected that the

---

[4]    *See also* Young v. Smith, 269 F. Supp. 3d 251, 263 (M.D. Pa. 2017), aff'd, 905 F.3d 229 (3d Cir.
2018) (counsel "suggested that it is her right to submit whatever billed entries she so pleases (valid or
not), and that it is opposing counsel's and the Court's job to parse through her fee bill, challenging those
that may be invalid. That is an astonishing misperception").

Motion request would be close to $200,000. She volunteered that she intends for her company to pay the amount the Motion requests. She stated this in different conversations more than once." Plaintiff's Documents Regarding Attorney's Fees [51], pp. 1-2. At oral argument on January 24, 2018, Mr. Fox stated that plaintiff had agreed to pay any fee award which the court might issue even if defendant were unable to pay it!

However, "[s]uch arrangements should not determine the court's decision. The criterion for the court is not what the parties agree but what is reasonable". Blanchard v. Bergeron, 489 U.S. 87, 92 (1989). Although "the degree of the plaintiff's success does not affect eligibility for a fee award . . . . it does bear on the propriety of fees awarded". Farrar v. Hobby, 506 U.S. 103, 114 (1992). "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Id. While plaintiff did obtain an injunction ([42], p. 2, §§4 *et seq.*), its claim that it obtained "all the substantive relief that it sought in this lawsuit" (plaintiff's Memorandum of Law [43-19], p. 3) is unfounded. For example, although plaintiff had alleged damages "in excess of $50,000" (Amended Complaint [23], ¶¶156, 161, 165, 171), the monetary component of the settlement was only $7,500 ([40-1], p. 2 of 8, §4).

"[I]f a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Farrar, 506 U.S. at 114. In that case, "the district court should award only that amount of fees that is reasonable in relation to the results obtained". Hensley, 461 U.S.at 440. Notwithstanding that rule, plaintiff has made no effort to account for its limited success.

"The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to

litigate the case effectively." Simmons v. New York City Transit Authority, 575 F.3d 170, 174

(2d Cir. 2009). In making that determination, the court may draw "on its own experience".

In re IndyMac Mortgage-Backed Securities Litigation, 94 F. Supp. 3d 517, 522 (S.D.N.Y. 2015),

aff'd, 673 Fed. App'x 87 (2d Cir. 2016). Based on my own experience (both in private practice

and on the bench), I am confident that no reasonable paying client, wishing to spend the

minimum to litigate the case effectively, would  agree to pay Mr. Fox $400 an hour, knowing

that it would *also* have to pay for separate trial counsel;[5] that no reasonable paying client would

agree to pay Mr. Fox $400 an hour to "research NY electronic filing rules" for 4.6 hours ([43-15,

p. 1, December 27, 2016 entry); and that no reasonable paying client would agree to pay him

$400 an hour to devote 44.33 hours to a sanctions motion "even though he told [plaintiff] it

would likely be denied". (Sauer Declaration [43-1], ¶85; [51-2], pp. 3-4).[6]

          In support of its fee motion, plaintiff submitted times records showing 311.13

hours [43-15], which, at $400 per hour, total the $124,452 which it initially sought. Yet in

response to my request  [50], Mr. Fox provided billing records showing that he did not charge

plaintiff  for several of the same time entries. *See*  "N/C" designations in [51-2, 51-3]. "[H]ours

not  properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to

statutory authority." Hensley, 461 U.S. at 434 (emphasis in original). The foregoing are but a few

examples of the excesses contained in the fee motion.

---

[5]        On July  30, 2018 Mr. Fox began to "research lawyers who . . . may be good fit as trial counsel".
After contacting several attorneys, he retained Larry Kerman on August 24, 2018. [51-3], pp. 1, 2.

[6]        "[P]arties to a litigation may fashion it according to their purse and indulge themselves and their
attorneys, but they may not foist their extravagances upon their unsuccessful adversaries." Chase
Manhattan Bank, N.A. v. Lassiter, 1993 WL 277220, *1 (S.D.N.Y. 1993).

Moreover, while a party may seek recovery for time *reasonably* devoted to preparation of a fee request, the 90.3 hours devoted to this motion ([43-15], pp. 7-9) clearly exceed the bounds of reason. *See* DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985) ("42 hours were spent on the fee motion itself, an utterly excessive claim"). In Ustrak v. Fairman, 851 F.2d 983, 987-88 (7th Cir. 1988), the court noted that "[f]or every hour spent litigating the merits the plaintiff's attorneys devoted almost 15 minutes to preparing a petition requesting fees for that hour", and concluded that "[t]his is the tail wagging the dog, with a vengeance".[7] In this case, the percentage of time devoted to the fee application (90.3 of 311.13, or 28%) is even higher than in Ustrak.

"The party seeking attorney's fees bears the burden of establishing entitlement to an award . . . . Counsel for the party seeking fees must make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . and failure to do so can result in denial of fees altogether." Toussie v. County of Suffolk, 2012 WL 3860760, *5 (E.D.N.Y.  2012).[8] Since plaintiff  has clearly not made that good faith effort,  I would recommend that its fee motion be denied even if it had been timely submitted.

---

[7]     "A claim for attorney's fees should not become the tail that wags the dog." Gaymar Industries, Inc. v. Cincinnati Suined Larry Kermanb-Zero Products, Inc., 2016 WL 8669633, *7 (W.D.N.Y. 2016).

[8]     *See also* First State Insurance Group v. Nationwide Mutual Insurance Co., 402 F.3d 43, 44 (1st Cir. 2005) ("[w]here the attorneys' fees requested are unreasonably excessive, it is within a court's discretion to deny fees entirely"); Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980) ("[i]f . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place").

**D.      Counsel Should Adjust the Legal Fees Charged to Plaintiff.**

I approach the last portion of this opinion reluctantly. I have known Steven Fox

for several years, and take no pleasure in second guessing the fee arrangements between an

attorney and his or her client. However, the fee motion has raised some concerns as to Mr. Fox's

billing arrangements with plaintiff and its president, Kim Sauer, which I cannot ignore. "Federal

courts have supervisory power over attorneys' fee arrangements", because "the fairness of the

terms reflects directly on the court and its bar". In re World Trade Center Disaster Site

Litigation, 754 F.3d 114, 125, 126 (2d Cir. 2014).  "Therefore, courts may review a fee

arrangement for reasonableness even if it has not been challenged by the parties" (id. at 126), in

order to "protect the client from excessive fees". In re Goldstein, 430 F.3d 106, 110 (2d Cir.

2005).

Based on four separate invoices [51-2, 51-3], Mr. Fox has billed plaintiff for this

case a total $90,308.90 for this case through January 17, 2019, at an hourly rate of $250. [51], p.

3. While I recognize that his efforts have conferred a benefit upon plaintiff, the billings appear to

be significantly out of proportion to the benefit conferred. For example, Mr. Fox has billed

plaintiff  $24,137.50 for 96.55 hours devoted to preparation of the fee motion ([51-3], p. 5), and

another $10,017.50 for 40.07 hours spent in an attempt to excuse his untimely filing of that

motion. Id., p. 8. If this Report and Recommendation is adopted, that motion will have conferred

no benefit on plaintiff, due to deficiencies for which Mr. Fox is solely responsible. "An

agreement will not be enforced where the compensation sought is excessive, or out of proportion

to the value of the attorney's services." King v. Fox, 418 F.3d 121, 135 (2d Cir. 2005).

Under the Retainer Agreement, plaintiff's president, Kim Sauer, is "personally

guaranteeing payment" of Mr. Fox's fee. [51-1], p. 1 of 5. She has "been financing it with loans.

Loans from friends and family and then some credit cards and personal loans". Sauer Declaration

[43-1] ¶79. She states that she "supported all the work he did. We talked about how much to do

all along the way. He offered to do less." Id., ¶85. She believes that "six figures" would be "a fair

legal bill for the amount of work and energy that my lawyer has put into this. Absolutely I think

that's fair". Id., ¶72. While that sentiment may be laudable, Mr. Fox knows better than Ms. Sauer

what is "fair" under these circumstances - after all, she "hired him because he really knows this

field". Id., ¶88.

The attorney-client "relationship is presumptively unequal". Dillon v. Dean, 158

A.D.2d 579, 580 (2d Dept. 1990). Where parties "do not deal on terms of equality . . . it is

incumbent upon the stronger party to show affirmatively that . . . all was fair, open, voluntary

and well understood." Cowee v. Cornell, 75 N.Y. 91, 99-100 (1878). Therefore, a contract

between an attorney and client "may be invalid if it appears that the attorney got the better of the

bargain, unless he can show that the client was fully aware of the consequences and that there

was no exploitation of the client's confidence in the attorney". Mar Oil, S.A. v. Morrissey, 982

F.2d 830, 839 (2d Cir. 1993).

Despite what I have concluded in this opinion, I continue to believe that Mr. Fox

is an able attorney. At oral argument on January 24, 2018 he told me that this was his first fee

motion, and I am confident that in the future he will learn from the same mistakes he made here.

Nevertheless, I am sure he would agree that the consequences of those mistakes should not be

borne by his client.[9]

Accordingly, if this Report and Recommendation is adopted, within 30 days

thereafter Mr. Fox shall either negotiate a reasonable fee with Ms. Sauer (on behalf of plaintiff)

---

[9]    It goes without saying (but I will say it anyway) that I expect Mr. Fox to provide a copy of this
Report and Recommendation to Ms. Sauer.

and report the amount of that fee to the court, or advise that plaintiff has invoked fee arbitration

pursuant to 22 N.Y.C.R.R. Part 137, as provided in the "Statement of Client's Rights" ([51-1], p.

5). The court will retain jurisdiction to determine the reasonableness of the fees assessed plaintiff

by Mr. Fox, both under its inherent authority and pursuant to of the Stipulation to Dismiss and

Order ("the District Court retain[s] jurisdiction . . . [to conduct] such further proceedings as may

be necessary or appropriate").


## CONCLUSION

For these reasons, I recommend that plaintiff's motions [43, 45] be denied, and

that the issue of a reasonable fee between plaintiff and Mr. Fox be resolved as directed herein.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation

must be filed with the clerk of this court by February 15, 2019. Any requests for extension of this

deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any

right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d

Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal

Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local

Rules of Civil Procedure, written objections shall "specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either

certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply

with these provisions may result in the district judge's refusal to consider the objections.


Dated: February 1, 2019


                                                    /s/ Jeremiah J. McCarthy
                                                    JEREMIAH J. MCCARTHY
                                                    United States Magistrate Judge